U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED

JAN 10 2003

ROBERT H. SHEMWELL, CLERK
BY [signature] DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

TRANSCONTINENTAL GAS PIPE LINE CORPORATION

VERSUS

9.72 ACRES OF LAND, MORE OR LESS IN CAMERON PARISH LOUISIANA; RESOURCE DEVELOPMENT GROUP, L.L.C.;

5.29 ACRES OF LAND, MORE OR LESS, IN CAMERON PARISH LOUISIANA; BRUCE N. KIRKPATRICK AND GEORGE L. PARET, III, IN THEIR CAPACITIES AS TRUSTEES OF (1) MATILDA GEDDINGS GRAY TRUSTS, MATILDA GEDDINGS GRAY TRUST FOR HAROLD H. STREAM, MATILDA GEDDINGS GRAY TRUST FOR SANDRA GRAY STREAM, AND MATILDA GEDDINGS GRAY TRUST FOR WILLIAM GRAY STREAM, AND (2)OPAL GRAY REVOCABLE TRUSTS, OPAL GRAY TRUST FOR HAROLD H. STREAM, III, OPAL GRAY TRUST FOR SANDRA LAWRY a/k/a SANDRA GRAY STREAM, AND OPAL GRAY TRUST FOR GRAY STREAM a/k/a WILLIAM GRAY STREAM; AND

.1 ACRES OF LAND, MORE OR LESS, IN CAMERON PARISH LOUISIANA; BRUCE N. KIRKPATRICK AND GEORGE L. PARET, III, IN THEIR CAPACITIES AS TRUSTEES OF (1) MATILDA GEDDINGS GRAY TRUSTS, AND (2) ANY UNKNOWN TRUST(S); AND ANY AND ALL UNKNOWN LANDOWNERS

CIVIL ACTION NO.: 02-CV-1951

JUDGE: TRIMBLE

MAGISTRATE JUDGE: WILSON

---

AMENDED COMPLAINT FOR DECLARATORY JUDGMENT, INJUNCTIVE AND OTHER EQUITABLE RELIEF, AND FOR CONDEMNATION

---

30

Pursuant to Federal Rule of Civil Procedure 71A and order Transcontinental Gas Pipe Line Corporation ("Transco") amends it original complaint as follows and by reference to the exhibits to the original complaint which are incorporated herein by reference:

**JURISDICTION AND VENUE**

1.

Transco is a corporation created under the laws of, and domiciled in, the State of Delaware, with its principal place of business in Houston, Texas.

2.

Resource Development Group, L.L.C. ("Resource"), Defendant, is a limited liability company organized pursuant to the laws of the State of Louisiana, with its principal place of business in Lake Charles, Louisiana.

3.

Bruce N. Kirkpatrick and George L. Parent, III ("Trustees"), Defendants, are domiciliaries of the State of Louisiana and reside in Calcasieu Parish, Louisiana.

3A.

Upon information and belief, an existing road connects with Highway 82 in Section 12 and proceeds south through Sections 12, 13, 14 and 23, Township 15 South, Range 15 West, Cameron Parish, Louisiana. Transco has previously acquired all rights to use the existing road from its connection with Highway 82 in Section 12 down to its intersection with the Resource Tract at the South Quarter (S¼) of Section 14, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

3B.

In the alternative, Transco has been informed that the existing road traverses the South Half of the Southeast Quarter (S½ of SE ¼) of Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, from the point it connects with Highway 82 to the point it finally exits Section 11, Township 15

South, Range 15 West, Cameron Parish, Louisiana. Transco has been informed that the Matilda Geddings Gray Trusts is the owner of the South Half of the Southeast Quarter (S½ of SE ¼) of Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

3C.

In the further alternative, Transco names as Defendants, any and all Unknown Owners who own Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, where the existing road traverses Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, from the point it connects with Highway 82 to the point it finally exits Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

3D.

Pursuant to Federal Rule of Civil Procedure 71A(c)(2), Transco names as Defendants any and all Unknown Owners.

4

For purposes of federal diversity jurisdiction, Transco is a citizen of Delaware and Texas, Resource is a citizen of Louisiana, and the Trustees are citizens of Louisiana. Therefore, complete diversity exists.

5

This is an action in which the amount in controversy exceeds $75,000, for reasons more specifically set forth in Paragraph 42, below.

6

Because there is complete diversity of citizenship and the amount in controversy exceeds $75,000, the Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1332 (diversity jurisdiction).

7

Also, as set forth in Paragraphs 35 through 42, below, Transco's rights and claims arise under and depend upon resolution of issues related to the interpretation and effect of the laws of the United States, specifically the Natural Gas Pipeline Safety Act ("NGPSA"), 49 U.S.C. §60101, *et seq.*, and the Natural Gas Act ("NGA"), 15 U.S.C. §717, *et seq.*

8

Also, Transco seeks an order of condemnation pursuant to the NGA, 15 U.S.C. §717f(h) and its FERC Certificate of Public Convenience and Necessity in Docket No. CP76-304 and a determination of just compensation for property rights to be condemned, if necessary. Upon information and belief, the amount claimed by the owners of the property rights sought to be expropriated exceeds $3,000.

9

Accordingly, this Court also has original subject matter jurisdiction over this civil action pursuant to 28 U.S.C. §1331 (federal question jurisdiction).

10

Venue in this Court is appropriate pursuant to 28 U.S.C. §1391(a) and(b).

**RESOURCE RIGHT-OF-WAY AGREEMENT**

11

Upon information and belief, Resource is the current owner of the South One Fourth (S-1/4) of Section 14, all of Sections 23, 24, and 26 and the East One-Fourth (E-1/4) of Section 27, Township 15 South, Range 15 West, in Cameron Parish, Louisiana.

12

Transco is the owner of a right of way or servitude for the construction, operation, maintenance, repair, replacement and removal of a pipeline under and across property described as Sections 23, 24, 26 and

27, Township 15 South, Range 15 West, in Cameron Parish, Louisiana, pursuant to a conventional servitude ("Resource Right-of-Way Agreement"), granting Transco a pipeline right of way (Exhibit A1).

13

Upon information and belief, the Resource Right-of-Way Agreement is currently in full force and effect and has not been modified in any way.

14

Pursuant to the Resource Right-of-Way Agreement, Transco has

> **[A] right-of-way or servitude to construct, lay, maintain, operate, alter, repair, remove a single twenty-four inch (24") pipeline and necessary appurtenances** thereto for the transportation of oil, gas, petroleum products or any other liquids, gases, or substances which can be transported in a pipeline . . . under, upon, over and through . . . [Resource's land].

15

Also, pursuant to the Resource Right-of-Way Agreement,

> **[A]ll rights of ingress and egress** to and from [the pipeline] shall be exercised along and within said right-of-way.

16

Under the Resource Right-of-Way Agreement, after construction of the Pipeline, the right of way reverted to 30 feet (30') in width, 15 feet (15') on each side of the center line of the Pipeline.

17

The Resource Right-of-Way Agreement further provides:

> [Transco] agrees to pay for all damages to crops, trees, fences, pasturage and other property on rights which may result from [Transco's] operations . . . .

18

The Resource Right-of-Way Agreement further provides:

> Upon written request and written approval, and payment for damages incurred, the right-of-way can be expanded temporarily for repairs and alterations.

**TRUST PROPERTY RIGHT-OF-WAY AGREEMENT**

19

Upon information and belief, Defendants Bruce N. Kirkpatrick and George L. Paret, III, are trustees of the current owners of 100% of the undivided interest in the West Three-Fourths (W-3/4) of Section 27, Township 15 South, Range 15 West, in Cameron Parish, Louisiana ("Trust Property").

20

Transco is the owner of a right of way or servitude for the construction, operation, maintenance, repair, replacement and removal of a pipeline under and across property described as the West Three Fourths (W-3/4) of Section 27, Township 15 South, Range 15 West, in Cameron Parish, Louisiana, pursuant to a conventional servitude ("Trust Property Right-of-Way Agreement") granting Transco a pipeline right of way (Exhibit A2).

21

Upon information and belief, the Trust Property Right-of-Way Agreement is currently in full force and effect and has not been modified in any way.

22

Pursuant to the Trust Property Right-of-Way Agreement, Transco has

> **[A] servitude for the construction, operation, maintenance, repair, replacement and removal of a pipeline** for the transportation of oil, gas, petroleum products, and any other gases, liquid, or substances which can be transported through a pipeline under and across [Defendants' land].

23

Also, pursuant to the Trust Property Right-of-Way Agreement, Transco has

> **[T]he right of ingress and egress** for the purpose of operation, maintenance, repair, replacement, and removal of the pipeline.

* * *

> [Transco] shall have access to the servitude only along routes designated by [Landowners] with [Transco] being responsible for the payment of all damages in conjunction therewith.

24

Under the Trust Property Right-of-Way Agreement, after construction of the Pipeline, the right of way reverted to the width of the pipe itself.

25

The Trust Property Right-of-Way Agreement further provides:

> [Transco s]hall be prohibited from constructing any buildings, towers, telephone or telegraph or electrical lines or any other facility above the ground **except for vents, cathodic protection devices and, as hereinafter provided, markers.**

26

The Trust Property Right-of-Way Agreement further provides:

> [Transco s]hall level and restore the surface of the land . . . to [its] original condition and normal contour as is reasonably practicable . . . As soon as weather conditions will permit, after initial construction is completed and after any subsequent repair or maintenance work has disturbed the surface . . . .

**MAIN LINE C SMART PIG SURVEY**

27

In August, 2000, Transco performed an electronic survey or test, commonly referred to as a "smart pig survey," on a section of its Main Line C pipeline ("Pipeline") which traverses Sections 23, 24, 26 and 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

28

As a result of the smart pig survey, and after extensive, careful correlation and analysis of data, certain "anomalies" were detected and identified. These "anomalies" are signs of potential metal loss, whether due to corrosion or denting of the pipe, or other causes. Their existence warrants further

investigation (digging and exposing the Pipeline) and possible maintenance, repair or replacement of pipe, if it is determined that metal loss has actually occurred. This type of work is commonly referred to as an "anomaly dig."

29

In due course, Transco scheduled to perform the anomaly digs on various parts of its pipeline system, in keeping with its standard procedures and programs for pipeline maintenance. It is now time, in keeping with that schedule, procedure and program, to conduct the anomaly digs on Defendants' property.

30

While conducting the anomaly digs, it would be both efficient and prudent to install one or more cathodic protection or corrosion control devices called "test leads" to the Pipeline while it is exposed. The test leads will help monitor the Pipeline for potential corrosion.

31

To conduct the anomaly digs and any necessary maintenance, repair or replacement of pipe, and to install test leads, access to the Pipeline and the anomaly locations and three temporary work spaces are necessary.

32

To access the Pipeline at the anomaly locations, Transco will need to traverse the existing private road depicted on Exhibit B, which road connects with Highway 82 and also intersects Main Line C near the border of Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana. Upon information and belief, the existing road connects with Highway 82 in Section 12 and proceeds south through Sections 12, 13, 14, 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana. Transco has previously acquired all rights to use the existing road from its connection with Highway 82 down to its intersection with the Resource Property at the South Quarter (S¼) of Section 14. In the alternative, if the existing road connects with Highway 82 in Section 11, or any portion of the existing road traverses Section

11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, then Transco will need to traverse the existing road for the short length from the point it connects with Highway 82 to the point it finally exits Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana. Transco will also need to traverse Sections 23, 24, 26 and 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana, along the route of the Pipeline, using a space 50 feet (50') in width north of the centerline of Main Line "C." The existing road and 50-foot access route will be used for the transport of machinery, equipment and personnel.

33

To conduct the three anomaly digs located on (1) W-3/4 of Section 27, (2) Section 26, and (3) Sections 23 and 24, to conduct any necessary maintenance, repair or replacement of pipe, and to install any test leads, Transco will need temporary work spaces 300 feet (300') in width and 400 feet (400') in length around each of the three dig locations: Main Line "C" Dig 1 on West Three Fourths (W¾) of Section 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,209,609.12', Y=393,653.22', Lat. 29° 43' 32.051"N, Lon. 93° 49' 25.182"W; Main Line "C" Dig 2 on Sections 26, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,212,583.87', Y=395,772.37', Lat. 29° 43' 53.664"N, Lon. 93° 48' 51.971"W; and Main Line "C" Dig 3 on Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,217,291.41', Y=399, 273.37', Lat. 29° 44' 29.322"N, Lon. 93° 47' 59.443"W."

34

Despite amicable demand, Defendants have refused to allow Transco access to the Pipeline or permission to conduct the necessary investigation, maintenance, repair or replacement of pipe, and installation of test leads.

33A

Transco is making arrangements, under very restrictive conditions imposed by the Landowners, to conduct surveys of the subject properties affected by this action for the purpose of use at trial.

## PIPELINE REGULATION

35

Transco is an interstate natural gas pipeline company as defined in the NGA, 15 U.S.C. §717, *et seq.*, and at all pertinent times has been engaged in the business of transporting natural gas in interstate commerce for sale in interstate commerce for resale to consumers. As such, Transco's facilities and operations, including the operation of the Pipeline on Defendants' property, have been continually subject to the jurisdiction and regulation of the Federal Energy Regulatory Commission ("FERC"), or its predecessor agency, the Federal Power Commission ("FPC") (collectively, "FERC"). Specifically, the Pipeline on Defendant's property was constructed, and has been continually operated and maintained pursuant to a Certificate of Public Convenience and Necessity issued by FERC to Transco.

36

In enacting the NGA, Congress "declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest." 15 U.S.C. §717(a).

37

The proposed anomaly digs and related work are necessary to assure the continued safe operation of the Pipeline necessary to assure the delivery of natural gas in interstate commerce consistent with Transco's service obligations under its FERC Certificate of Public Convenience and Necessity.

38

Transco is a transporter of gas and owner and operator of pipeline facilities as defined by the NGPSA, 49 U.S.C. §60101. Accordingly, Transco's facilities and operations, including the Pipeline on Defendants' property, are and have been at all pertinent times, regulated by the United States Department of Transportation ("DOT") and subject to the regulatory jurisdiction of that agency.

39

Pursuant to the NGPSA, the Secretary of DOT prescribes safety standards for pipeline transportation and for pipeline facilities. The NGPSA completely preempts the field of pipeline safety.

40

NGPSA regulations are mandatory, and a pipeline may be legally operated only if the express terms of the NGPSA and the regulations promulgated thereunder have been met. The safety standards provided for in the NGPSA and the regulations apply to transporters of gas and owners and operators of pipeline facilities, such as Transco, and also apply to the inspection, monitoring, corrosion control, maintenance and replacement of pipeline facilities.

41

The proposed anomaly digs and related work are necessary to assure continued compliance with the NGPSA and regulations promulgated pursuant thereto to maintain adequate safety standards for the Pipeline. Transco has scheduled the work but has been delayed due to Defendants' refusal to allow either access or the space necessary for the proposed work.

42

Failure to comply with the NGPSA may subject Transco to civil penalties of as much as $25,000 per day, or a maximum of $500,000. Its facilities could be ordered shut down by DOT, which would constitute a forced abandonment of Transco's FERC-certificated facilities and services without FERC approval, in violation of the NGA, 15 U.S.C. §717(b). Alternatively, Transco could be forced by DOT to operate at a lower pressure level, thus reducing the volumes of natural gas which could be transmitted and preventing Transco from meeting its service obligations under its FERC certificates in violation of the NGA. In the case of either shut down of the Pipeline or curtailment of volumes of natural gas transported, the loss to Transco would be in the millions of dollars, well in excess of $75,000.

**CLAIM FOR DECLARATORY JUDGMENT**

43

Transco reiterates and incorporates herein by reference the allegations contained in paragraphs 11 through 42.

44

For reasons set forth above in Paragraphs 11 through 26 and pursuant to Louisiana law, Transco has, at least in part, the contractual right to access the subject property, servitude and Pipeline as described, to conduct the necessary anomaly digs and any required maintenance, repair or replacement and to install test leads as deemed prudent for cathodic protection purposes on the subject property within the temporary work spaces described, subject only to the obligation to do minimal harm, and repair the property or pay for any damages.

45

There currently exists a justiciable controversy regarding Transco's rights to access the Defendants' property, to conduct the necessary anomaly digs and any required maintenance, repair or replacement, and to install test leads as deemed prudent for cathodic protection purposes.

46

Pursuant to 28 U.S.C. §2201, Transco is entitled to a determination of its rights to access the Defendants' property, to conduct the necessary anomaly digs and any required maintenance, repair or replacement, and to install test leads as deemed prudent for cathodic protection purposes.

47

Accordingly, Transco is entitled to a judgment declaring its contractual rights to access the Defendants' property, to conduct the necessary anomaly digs and any required maintenance, repair or replacement, and to install test leads as deemed prudent for cathodic protection purposes.

## CLAIM FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF

48

Transco reiterates and incorporates herein by reference the allegations contained in Paragraphs 11 through 42.

49

Defendant is prohibited by law and by contract from doing anything tending to diminish or make more inconvenient Transco's use of the servitude.

50

Accordingly, Transco is entitled to injunctive relief ordering Defendants to cease and desist from preventing or interfering with Transco's access to and from the servitude and Pipeline, with Transco's use of necessary temporary work space to conduct anomaly digs, necessary maintenance, repair or replacement of pipe, and with Transco's installation of corrosion control devices.

## CLAIM FOR CONDEMNATION

51

Transco reiterates and incorporates herein by reference the allegations contained in Paragraphs 11 through 42.

52

Defendant's continued refusal to allow access and the required work to be conducted threatens to interfere with Transco's ability to continue to comply with the terms of its FERC certificate and the provisions of the NGPSA and the regulations thereunder.

53

Transco seeks to acquire any additional property or rights needed and not already granted in its right-of-way agreements with Defendants or as a matter of Louisiana law, including: (A) temporary use of the existing road traversing Sections 11 and/or 12, and Sections 13, 14 and 23, Township 15 South, Range 15

West, Cameron Parish, Louisiana, (B) a temporary right of access fifty feet (50') in width along the Pipeline traversing Sections 23, 24, 26 and 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana, (C) temporary work spaces 300 feet (300') in width and 400 feet (400') in length around the three anomaly dig locations depicted on Exhibit C and located in (1) W¾ of Section 27, (2) Section 26, and (3) Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana, and (D) temporary authority to conduct anomaly digs, any necessary maintenance, repair or replacement of pipe, and the installation of test leads. Transco seeks to acquire these property rights through the exercise of its right of eminent domain under the authority of the NGA, 15 U.S.C. §717f(h), and Transco's Certificate of Public Convenience and Necessity issued by FERC in Docket CP76-304.

54

Despite good faith efforts, Transco has not been able to reach a conventional agreement with the Defendants for the property rights sought.

55

Transco proposes to continue to serve the public interest by continuing to use the existing FERC-certificated Pipeline to transport natural gas in interstate commerce for sale in interstate commerce, and to use the area expropriated for the maintenance and operation of the Pipeline in accordance with the NGPSA and NGA.

56

Transco has a real necessity for the property rights sought, to maintain and assure the continued safe operation of the Pipeline and to continue to meet its service obligations and serve the public purpose of its FERC Certificate.

57

Upon information and belief, Defendant's demand for the rights sought in this alternative claim would exceed $3,000.

58

Accordingly, Transco prays for judgment condemning the necessary property to create the property rights sought.

59

Pursuant to 15 U.S.C. §717f(h), this condemnation action is to be expedited and conducted with preference and the greatest possible dispatch.

**RESOURCE PROPERTY**

60

The property owned by Resource on, over, and across which Transco's existing Pipeline and right of way and any additional area to be expropriated are located is described as follows:

> The South Quarter (S¼) of Sections 14, all of Sections 23, 24, and 26, and the East Quarter (E-1/4) of Section 27, all in Township 15 South, Range 15 West, Cameron Parish, Louisiana.
>
> The section of the existing road needed is located in and traverses the South Quarter (S¼) of Section 14, and Section 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

61

The Pipeline is located on the above-described property along the following described line:

> Commencing at a point located on the boundary line between the lands of Grantor and the lands of Patti Pavell Domatti, et al, on the North; which point is located at a distance of 3534 feet measured in an Easterly direction along said boundary from the Northwest Corner of Section 24, Township 15 South, Range 15 West, in Cameron Parish, Louisiana; THENCE South 56° 09' West a distance of 12,571 feet to a point of exit located on the boundary line between the lands of Amoco Production Company and the lands of Alice K. Arguello, et al, Co-Trustees for Matilda Geddings Gray Stream Trusts on the West; which point is located at a distance of 2320 feet measured in a Southerly direction along said boundary line from an 8 inch post located on the North boundary line of Section 27, Township 15 south, Range 15 West in Cameron Parish, Louisiana; all which is shown on a plat pre-pared by Grantee, which said plat is attached hereto and made a part hereof.

61A

Transco is making arrangements, under very restrictive conditions imposed by the Landowners, to conduct surveys of the subject properties affected by this action for the purpose of use at trial.

62

The proposed access route and temporary work space are depicted on the aerial photgraph attached hereto as Exhibit "B." The locations of the anomaly dig sites are depicted as Main Line "C" Digs #2 and #3 on the plat attached hereto as Exhibit "C." A detailed schematic drawing of the temporary work spaces and work plan is attached hereto as Exhibit "D." The test leads will be installed on the Pipeline within the area of the temporary work space. The total acreage affected is approximately 9.72 acres, more or less.

63

Subject to Paragraph 62, the interests or rights to be acquired in the Resource property are those additional interests not already granted by the Resource Right-of-Way Agreement or by operation of law, such that Transco has the following interests or rights:

(1) a temporary right of way to use an existing road traversing the South Quarter (S¼) of Section 14 and Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana;

(2) a temporary right of way 50 feet (50') in width north of the centerline of Main Line "C" traversing Sections 23, 24, 26 and 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana;

(3) temporary work spaces 300 feet (300') in width and 400 feet (400') in length around two anomaly dig sites: Main Line "C" Dig 2 on Sections 26, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,212,583.87', Y=395,772.37', Lat. 29° 43' 53.664"N, Lon. 93° 48' 51.971"W; and Main Line "C" Dig 3 on Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,217,291.41', Y=399, 273.37', Lat. 29° 44' 29.322"N, Lon. 93° 47' 59.443"W; and

(4) a right to install corrosion control devices on the Pipeline, as deemed necessary, within the area of the temporary work spaces.

64

The only person known to Transco to have or claim an interest in the property rights to be condemned is Resource Development Group, L.L.C.

**TRUST PROPERTY**

65

Upon information and belief, the property owned by the Trusts on, over and across which Transco's existing Pipeline and right of way and any additional area to be expropriated are or may be located is described as follows:

> The West Three Fourths (W¾) of Section 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

Upon information and belief, the existing road connects with Highway 82 in Section 12 and proceeds south through Sections 12, 13, 14 and 23, Township 15 South, Range 15 West, Cameron Parish, Louisiana. Transco has previously acquired all rights to use the existing road from its connection with Highway 82 down to its intersection with the Resource Tract at the South Quarter (S¼) of Section 14. Transco has been informed that the Matilda Geddings Gray Trusts may own the South Half of the Southeast Quarter (S½ of SE¼) of Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana and that the Matilda Geddings Gray Trusts claim that a small portion of the existing road traverses their property. Therefore, in the alternative, if the existing road connects with Highway 82 in Section 11, or traverses any portion of Matilda Geddings Gray Trusts' property in Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, then the additional property owned by the Matilda Geddings Gray Trusts to be expropriated is described as follows:

> The existing road that traverses any portion of the South Half of the Southeast Quarter (S½ of SE ¼) of Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, from the point it connects with Highway 82 to the point it finally exits Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana.

66

The Pipeline is located on the above-described property along the following described line:

> Beginning at a point located on the boundary line between the lands of Alice K. Arguello, et al, and the lands of Amoco Production Company, on the East; which point is 2,337 feet South along said boundary line from an 8 inch post located on the North boundary line of Section 27, Township 15 South, Range 15 West; thence South 53° 9' West 4,949 feet to a point on the boundary line between the lands of Alice K. Arguello, et al, and the lands of Charles O. Noble, et al on the West; said boundary line being the West line of Section 34, Township 15 South, Range 15 West; said point being 25 feet more or less, measured in a southerly direction from the Northwest corner of Section 34, being shown on Transcontinental Gas Pipe Line Corporation Drawing No. 20-06-0526/B-62560, Revision 2, marked Exhibit B.

67

The proposed access route and temporary work space are depicted on the aerial photograph attached hereto as Exhibit "B." The location of the anomaly dig is depicted as Mainline "C" Dig #1 on the plat attached hereto as Exhibit "C." A detailed schematic drawing of the proposed temporary work space is attached hereto as Exhibit "D." The test leads will be installed on the Pipeline within the area of the temporary work space and work plan. The total acreage affected is approximately 5.29 acres, more or less.

67A.

Transco is making arrangements, under very restrictive conditions imposed by the Landowners, to conduct surveys of the subject properties affected by this action for the purpose of use at trial.

68

Subject to Paragraph 67, the interests or rights to be acquired in the Trust Property are those additional interests not already granted by the Trust Property Right-of-Way Agreement or by operation of law, such that Transco has the following interests or rights:

(1) a temporary right of way to use an existing road to the extent it traverses Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana, from the point it connects with Highway 82 to the point it finally exits Section 11, Township 15 South, Range 15 West, Cameron Parish, Louisiana;

(2) a temporary right of way 50 feet (50') in width north of the centerline of Main Line "C" traversing the West Three-Quarters (W¾) of 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana;

(3) a temporary work space 300 feet (300') in width and 400 feet (400') in length around the anomaly dig site: Main Line "C" Dig 1 on West Three Fourths (W¾) of Section 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,209,609.12', Y=393,653.22', Lat. 29° 43' 32.051"N, Lon. 93° 49' 25.182"W; and

(4) a right to install corrosion control devices on the Pipeline, as deemed necessary, within the area of the temporary work space.

69

The only persons known to Transco to have or claim an interest in the property rights to be condemned are Matilda Geddings Gray Trusts, Matilda Geddings Gray Trust for Harold H. Stream, Matilda Geddings Gray Trust for Sandra Gray Stream, Matilda Geddings Gray Trust for William Gray Stream, Opal Gray Revocable Trusts, Opal Gray Trust for Harold H. Stream, III, Opal Gray Trust for Sandra Lawry a/k/a Sandra Gray Stream, and Opal Gray Trust for Gray Stream a/k/a William Gray Stream.

**WHEREFORE,** Transcontinental Gas Pipe Line Corporation prays that, after due proceedings are had, this Court issue a judgment:

(1) declaring Transcontinental Gas Pipe Line Corporation's rights of access to its right of way and Pipeline, to temporary work space for performing an anomaly dig and any related inspection, maintenance, repair or replacement of pipe, and for installing cathodic protection devices, as deemed necessary;

(2) enjoining and prohibiting Defendants, other Landowners, or anyone acting on their behalf, from preventing or interfering with Transcontinental Gas Pipe Line Corporation's access to and from its servitude and Pipeline, with Transco's use of necessary temporary work space to conduct anomaly digs, necessary maintenance, repair or replacement of pipe, and with Transco's installation of cathodic devices;

(3) granting Transcontinental Gas Pipe Line Corporation any additional rights necessary for use of an existing road traversing Sections 11 and/or 12, and Sections 13, 14 23, and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana; a right of way 50 feet (50') in width north of the centerline of Main Line "C" on Sections 23, 24, 26, and 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana; temporary work spaces 300 foot wide by 400 foot long around the three anomaly locations depicted on Exhibit "C": Main Line "C" Dig 1 on West Three Fourths (W¾) of Section 27, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,209,609.12', Y=393,653.22', Lat. 29° 43' 32.051"N, Lon. 93° 49' 25.182"W; Main Line "C" Dig 2 on Sections 26, Township 15 South, Range 15 West,

Cameron Parish, Louisiana, X=1,212,583.87', Y=395,772.37', Lat. 29° 43' 53.664"N, Lon. 93° 48' 51.971"W; and Main Line "C" Dig 3 on Sections 23 and 24, Township 15 South, Range 15 West, Cameron Parish, Louisiana, X=1,217,291.41', Y=399, 273.37', Lat. 29° 44' 29.322"N, Lon. 93° 47' 59.443"W; and the right to conduct anomaly digs, any necessary maintenance, repair or replacement of pipe, and the installation of test leads within the temporary work spaces; and awarding Defendants just compensation for the rights taken; and

(4) casting Defendants with all costs of these proceedings.

Respectfully submitted:

Linda Akchin (Bar Roll No. 17904)
Robert M. Hoyland (Bar Roll No. 22801)
KEAN, MILLER, HAWTHORNE, D'ARMOND,
McCOWAN & JARMAN, L.L.P.
One American Place, 22nd Floor
Post Office Box 3513 (70821)
Baton Rouge, Louisiana 70825
Telephone: (225) 387-0999
Attorneys for Transcontinental Gas Pipe Line Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing Pleading has been served this date upon all counsel of record by facsimile on January 10, 2003 and by hand delivery on January 10, 2003, and addressed as follows:

A. J. Gray, III (#6253)
Anna Gray (#17055)
P.O. Box 1467
Lake Charles, Louisiana 70602-1467
Telephone: (337) 494-0694
Facsimile: (337) 494-0697

Baton Rouge, Louisiana, this 10th day of January, 2003.

Robert M. Hoyland